DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Guyan International, Inc., dba Permco, et al. ) | |
| ) | CASE NO. 5:10 CV 823 |
| Plaintiffs, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| Professional Benefits Administrators, Inc., et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

This case was initially filed by plaintiff Guyan International, Inc., dba Permco, (Permco) against defendants Professional Benefits Administrators (PBA) and Robert Hartenstein (Hartenstein). Permco entered an agreement with PBA to administer Permco's Employee Benefit Plan (Plan). Under the agreement, PBA was to pay Permco's employees' claims under the Plan with funds provided by Permco to PBA for that purpose. At some point, Permco became aware that PBA had not paid the Plan claims as agreed and that Permco's funds were unaccounted for. Permco sued PBA and Hartenstein for damages in connection with defendants' alleged failure to pay Plan claims and for the missing funds.

The parties entered into a stipulated injunction to prevent defendants from accessing Plan funds in accounts opened by PBA at KeyBank, and the Court subsequently granted Permco's motion for appointment of a Receiver for PBA. See ECF 27. The Receiver is responsible for overseeing the operations of PBA and hired a forensic accountant who produced a report regarding the monies and accounts of PBA and its clients.

(5:10 CV 823)

This lawsuit has become increasingly complex.  Since Permco first filed its complaint, five intervening plaintiffs[1] with similar allegations have joined the lawsuit, and multiple cross-claims and third party complaints have been filed, adding four additional parties[2] to the lawsuit.  The claims of the intervening plaintiffs, cross-claimants, and third party complaints all relate to who is responsible for the non-payment of provider claims and missing monies of PBA's clients.  In the interest of advancing the core complaint of the original plaintiff, Permco, and of shaping the resolution of the core claim of the intervening plaintiffs, the Court determined to allow Permco to file a partial motion for summary judgment in the belief that resolution of this aspect of this case will focus and advance resolution of the entire case.

Accordingly, plaintiff Permco was granted leave to file a motion for partial summary judgment only with respect to its claims against defendant PBA, and Permco moved for summary judgment against PBA on Counts 3[3] and 4[4] of its complaint for compensatory damages resulting from PBA's breach of its fiduciary duty, or alternatively, for PBA's breach of contract ECF 101.  PBA opposed Permco's motion (ECF 151), and Permco replied (ECF 154).  For the

---

[1] Intervening plaintiffs Pritchard Mining Company, Merit Gear, Precision Gear, Sheltering Arms Hospital Foundation, and Hocking, Athens, Perry Community Action Agency.

[2] Pamela S. Priddy, Myriad Health, Apple Growth Partners, and Curtis Professional Group.

[3] "PBA and Hartenstein have breached their fiduciary duties toward the Plan and its participants in violation of 29 U.S.C. § 1109 and § 1104(a)."

[4] "PBA has breached the terms of the Agreement by failing to pay claims and . . . by diverting monies intended to pay claims for its own benefit or for the benefit of others."

(5:10 CV 823)

reasons contained herein, Permco's motion for partial summary judgment as to Count 3 against PBA is GRANTED.

## I. FACTS

There is no genuine dispute regarding the following facts based on the record before the Court. The Plan, established in the mid 1990's, is an employee benefit plan as defined under the Employer Retirement Income Security Act of 1974, as amended, (ERISA), 29 U.S.C. 1002. The Plan is funded in part by the contributions of Permco and in part by the contributions of Permco's covered employees through payroll deduction.

Permco and PBA entered into a Benefit Management Service Agreement on June 18, 2007 (Agreement). The Plan document identifies PBA as the Claims Administrator, and states "CLAIMS ADMINISTRATOR IS NOT A FIDUCIARY. A Claims Administrator is not a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator."[5]

Section 5 of the Agreement outlines PBA's responsibilities under the Agreement. Section 6 of the Agreement[6] authorizes PBA as the Benefits Administrator to pay medical and

---

[5] ECF 151-3, Page ID # 1713.

[6] Section 6. Benefit Plan Payments
    (A)    The Plan Administrator authorizes PBA to pay Plan benefits by checks written on a bank account established and maintained for the payment of Plan benefits. The Plan Administrator shall fund into the bank account such monies as are needed for the payment of Plan benefits. . . . .
        (1)    PBA shall have the authority to provide whatever notifications, instructions, or directions to any custodial agent that may have actual custody of the Plan Administrator's funds as may be necessary to accomplish the disbursement of such Plan funds . . . in payment of approved claims.

(continued...)

(5:10 CV 823)

prescription Plan benefits by check from monies in a segregated bank account funded by Permco for that purpose. The Agreement gave PBA authority over Plan funds provided by Permco to pay Plan benefits, and specifically provided that PBA could not comingle personal or business assets from the Permco segregated bank account, or use the monies in that account for its own purpose.

Permco paid PBA an administration fee for its services in accordance with a fee schedule described in Section 7 of the Agreement. This fee was paid by Permco to PBA monthly. Subsection (B) of Section 7 required that PBA bill Permco for administrative fees "separately from statements for payment of claims."

Pursuant to the terms of the Agreement regarding payment of benefit claims, PBA established a segregated bank account at KeyBank (Permco Account). The purpose of a segregated account was to protect Permco's funds and assure that those funds were used to pay Plan claims.

PBA periodically sent Permco a written "claim money transfer" requesting a check for a specific amount supported by a statement of medical and prescription claims to be paid by the money transfer requested. In response to a "claim money transfer" Permco provided monies to PBA to fund the Permco Account and to be used by PBA exclusively to pay medical and

---

[6](...continued)
. . .
    (B)    PBA shall not comingle among its business or personal assets, or draw against for its own purpose, any monies or contributions of the Plan Administrator . . . .
    (C)    PBA shall cause to be established a separate and segregated account for the purpose of claim and insurance payments identifiable as the Plan Administrator's account.

4

(5:10 CV 823)

prescription claims of Plan participants. PBA controlled Permco funds and the exercised its authority and control over the funds by determining the account into which the funds would be deposited and the distribution of those fund by writing checks against the funds.

PBA did not always deposit the funds received from Permco into the Permco Account, but deposited the funds into another PBA account, the "main account," which PBA utilized to pay its general operating and other expenses instead of claims under the Plan. Further, PBA did not always write checks against the funds for the purpose of paying Plan claims. There is no genuine dispute that Plan funds provided to PBA by Permco for the payment of Plan claims were not used for claims, but were used by PBA for the cost of operations and for other uses than the payment of Plan claims. Health care providers went unpaid for so long that, in some instances, the providers refused to provide treatment to Permco's employees.

There is no genuine dispute based on the record before the Court that Plan claims were not paid by PBA or that PBA used Plan funds provided by Permco not for the payment of Plan claims, but for the operations of PBA and for the payment of other client's claims.

The amount of funds provided by Permco to PBA for the payment of Plan claims that were not paid by PBA and were used by PBA for its own purposes totals $501,380.75. When Permco realized that PBA was not using Permco monies to pay Plan claims, Permco terminated its agreement with PBA and brought the instant action.

(5:10 CV 823)

## II.  APPLICABLE LAW AND ANALYSIS

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." U.S. v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he threshold inquiry [is] whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Therefore, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

B. <u>Count 3 - Breach of Fiduciary Duty under ERISA (29 U.S.C. 1109)</u>

In Count 3 of the complaint, Permco alleges that PBA is liable under ERISA because PBA breached its fiduciary duty to the Plan and plan participants.  29 U.S.C. 1109(a) provides:

(5:10 CV 823)

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

In order to prevail in it motion for partial summary judgment with respect to Count 3, Permco must establish that there is no genuine dispute that: 1) PBA was a Plan fiduciary; 2) PBA's acts constituted a breach of fiduciary duty; and 3) PBA's breach caused harm to Permco. *See Shirk v. Fifth Third Bankcorp,* 2008 WL 4449024 at *9(S.D. Ohio 2008) (citing *Pegram v. Herdrich,* 530 U.S. 211, 225-26 (2000); *Miller v. Yazaki North America,* 2006 WL 3446246 at *4 (E.D. Mich. 2006) (there must be a causal link between the breach of fiduciary duty and plaintiff's loss) (citing *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002)).

### 1. PBA is an ERISA Fiduciary

Under 29 U.S.C. 1002(21)(A), a person is a fiduciary with respect to an employee benefit plan to the extent that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . with respect to any money or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. 1002(9) defines a "person" to mean "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."

7

(5:10 CV 823)

The Sixth Circuit employs a "functional test" to determine fiduciary status under ERISA. *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006).  That is, ERISA defines fiduciary not in terms of formal trusteeship but in functional terms of control and authority.  *Id.* (internal quotations omitted) (citing *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993)).  Accordingly, in order to determine whether PBA is a fiduciary under ERISA with respect to the Plan, the Court's inquiry focuses on the determination of PBA's function.  That is, whether PBA "exercised *discretionary* authority over plan management, or *any* authority or control over plan assets."  *Briscoe v. Fine*, 444 F.3d at 488 (emphasis in original) (citing 29 U.S.C. 1002(A)(21)).

      *a.*  *PBA did not exercise discretionary authority or control over the Plan.*

There is no genuine dispute that the Agreement between Permco and PBA did not give PBA the power to make Plan policies or interpretations.  PBA's role as a claims/benefits administrator involved receiving and depositing Plan funds, determining eligibility, and writing checks against Plan funds, ostensibly to pay Plan claims.   The law in the Sixth Circuit is clear that third party administrators performing such functions do not exercise discretionary authority with respect to the plan and are not ERISA fiduciaries under that aspect of the statutory definition.  *Briscoe v. Fine*, 444 F.3d at 488-490.  Accordingly, the Court concludes as a matter of law that the PBA was not an ERISA fiduciary as regards its ability to exercise discretionary authority over the Plan.

(5:10 CV 823)

       *b.*  *PBA exercised control and authority over Plan assets.*

Even if a person does not exercise discretionary authority over an ERISA Plan, they can still be an ERISA fiduciary if they exercise " any authority or control" over the management or disposition of plan assets. The Sixth Circuit, applying "the prevailing cannons of statutory construction" to 29 U.S.C. 1002(21)(A)(i) has determined that the second part of the statutory definition of ERISA at 29 U.S.C. 1002(21)(A)(i) does <u>not</u> require that the control exercised over the management or disposition of plan assets be discretionary in order to satisfy that aspect of the definition of an ERISA fiduciary. *Briscoe v. Fine*, 444 F.3d at 491. As a consequence, the threshold for finding fiduciary responsibilities is lower for persons handling plan assets than for persons managing the plan. *Id.*

In *Brisoce,* Judge Gilman provided a lengthy analysis of case law from other circuits regarding the type of authority or control over plan assets which satisfies the statutory definition of an ERISA fiduciary. *Briscoe v. Fine*, 444 F.3d at 492-94 (*IT Corp v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) ("the right to write checks on plan funds is 'authority or control respecting management or disposition of plan assets.'"); *LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir. 1997) (parties who possess and use their power to write checks on a plan account exercise control over plan assets); *David P. Coldesina, D.D.S. v. Estate of Simper,* 407 F.3d 1126, 1133-35 (10th Cir. 2005) (parties who possess and use their power to write checks on a plan account exercise control over plan assets).

9

(5:10 CV 823)

Based on its analysis of the statutory language, the Sixth Circuits's earlier holding in *Smith v. Provident Bank*,[7] and the case law in other circuits regarding what constitutes "any authority or control" regarding the management or disposition of plan assets, the Sixth Circuit in *Briscoe* held that "any person or entity that exercises control over the assets of an ERISA-covered plan, including third-party administrators, acquires fiduciary status with regard to the control of those assets," and concluded that the third party administrator in *Briscoe* was an ERISA fiduciary because it had the power to write checks on the plan account and exercised that power both before and after its contractual relationship as a third party administrator had ended. *Briscoe v. Fine*, 444 F.3d at 494.[8]

In so holding, the Sixth Circuit was careful to acknowledge the limits of its holding regarding fiduciary status:

> We wish to emphasize that our holding today is a limited one. Our reading of ERISA's statutory definition will not "extend fiduciary status to every person who exercises 'mere possession or custody' over the plans' assets." [citations omitted]. To the contrary, our decision conforms with the statute's "purpose of assuring that people who have practical control over and ERISA plan's money have fiduciary responsibility as to the plan's beneficiaries." *IT Corp.,* 107 F.3d at 1421.

*Briscoe v. Fine*, 444 F.3d at 494.

---

[7] *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).

[8] "The decision in *Smith* is faithful to the plain language of 29 U.S.C. § 1002(21)(A) - as the vast majority of circuits to address the question have construed that language - and serves to clarify that a third-party administrator performing the [purely ministerial functions] described in the DOL regulation can nevertheless acquire fiduciary status where, in addition to its other actions, it exercises control over plan assets."

10

(5:10 CV 823)

In this case, there is no genuine dispute that Permco provided Plan funds to PBA and that PBA had practical control over those assets. Once the Plan funds were received from Permco, PBA controlled the deposit and transfer of Plan funds into various PBA accounts. PBA further had practical control over Plan funds because it had the ability to write checks against Plan funds, even checks which were not written in payment of Plan claims in accordance with Plan rule established by the Plan administrator.

PBA's ability to deposit Plan funds in accounts of its choosing, and to divert Plan funds to uses other than for payment of Plan benefits, demonstrates that there is no genuine dispute that PBA had authority and control over Plan funds, not mere custody of the funds. PBA both possessed the power to control the deposit and to write checks against the Plan funds provided to PBA by Permco and exercised that power.

The Court finds that there is no genuine dispute as to any material fact regarding PBA's control and authority over Plan assets. PBA did not merely have possession or custody of Plan assets, but exercised control and authority over the disposition of Plan funds within the meaning of the statute and controlling case law. Accordingly, the Court concludes as a matter of law that PBA was an ERISA fiduciary of the Plan within the meaning of 29 U.S.C. § 1001, et seq.

### 2. **PBA Breached its Fiduciary Duty**

Having concluded that PBA is an ERISA fiduciary because PBA had control and authority over Plan funds, the second factor in the analysis is whether there is a genuine dispute as to whether PBA breached its fiduciary duty. ERISA fiduciaries are required by law to act "solely in the interest of the [Plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *see*

11


(5:10 CV 823)

*also Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995).  In addition to describing how ERISA fiduciaries are required to conduct themselves with respect to the Plan, the statute also describes prohibited conduct, including "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).

As a fiduciary, PBA had a duty to use Plan assets solely in interest of the Plan - in this case, for payment of Plan health care claims.  Based on the record before the Court, there is no genuine dispute that PBA used Plan assets for its own operational expenses, constituting a use of Plan assets for PBA's own interests and for its own account, which is prohibited conduct by a fiduciary under ERISA.   Accordingly, the Court concludes as a matter of law that PBA breached its fiduciary duty under ERISA.

### 3. PBA's Breach of its Fiduciary Duty Caused the Loss of Permco's Plan Funds

There is no genuine dispute that the health care benefit Plan established by Permco for its eligible employee is self-funded.  That is, the Plan is funded by contributions from Permco, and in part, by contributions of Permco's covered employees through payroll deduction.  When Permco received a list of claims and costs from PBA, Permco provided PBA with a check in the amount required by PBA to cover those Plan claims.

PBA argues in opposition to Permco's partial motion for summary judgment on Count 3 that Permco itself was not damaged by PBA's breach of fiduciary duty because the funds at issue were not paid to medical providers.  PBA reasons that because Permco has not advanced an additional $501,380.75 to pay those providers, Permco has not been harmed by PBA's breach of fiduciary duty.

12

(5:10 CV 823)

PBA's argument is untenable, and would require Permco to expend an additional $501,380.75 before it could prove its claim.  There is no genuine dispute in the record before the Court that Permco provided PBA with the funds at issue or that PBA breached its fiduciary duty to use those funds for payment of provider claims by diverting those fund to its own use and purpose.  Permco's employee health care plan is self-funded.  When Permco hired PBA as a third-party administrator, Permco was not relieved of its financial obligation to pay provider claims.  The loss of Permco's monies provided to PBA for payment of provider claims was caused by PBA.  There is no genuine dispute that Permco has been damaged by PBA's diversion of $501,380.75, which Permco provided PBA to pay provider claims in Permco's self-funded employee benefit plan, and which is now not available to Permco to fund provider payments.

Accordingly, the Court concludes as a matter of law that PBA's breach of its fiduciary duty resulted in damages to Permco in the amount of $501,380.75.

C.  Count 4 - Breach of Contract

Permco also moved for partial summary judgment on Count 4 of the complaint in the alternative if the Court found that PBA was not an ERISA fiduciary.  Permco's state claim for breach of contract is preempted by ERISA because the Court has determined that PBA was an ERISA fiduciary.   However, had the Court concluded that PBA was not an ERISA fiduciary, Permco's breach of contract claim would not be preempted by ERISA.  *See Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 701-03 (6th Cir. 2005).

13

(5:10 CV 823)

In that event, the same analysis that formed the basis for the Court's determination to grant Permco's motion for partial summary judgment on Count 3, would also support a determination that Permco's motion for partial summary judgment on Count 4 should be granted. The Court found *supra* that there is no genuine dispute that Section 6 (B) of the Agreement between Permco and PBA provided that "PBA shall not commingle among its business or personal assets, or draw against for its own purposes, any monies or contributions of [Permco] or Plan Participants" or that PBA used Permco funds provided to PBA pursuant to the Agreement in violation of Section 6.  Permco sustained damages as a consequence of that breach based on the Court's causation analysis, *supra*.

Accordingly, if the Court had concluded that PBA was not an ERISA fiduciary, it would have been appropriate to grant Permco's motion for partial summary judgment as to Count 4 based on the findings determined by the Court in connection with its analysis of Permco's motion with respect to Count 3.

### III.  CONCLUSION

A. <u>Permco's Motion for Partial Summary Judgment as to Count 3 is GRANTED</u>

For the reasons contained herein, the Court had determined that there is no genuine dispute that PBA was an ERISA fiduciary with respect to Permco's sel-insured employee health care plan, that PBA breached its fiduciary duty by diverting for its own use $501,380.75 that was provided to PBA by Permco for payment of Plan claims, and that PBA's breach of fiduciary duty damaged Permco in the amount $501,380.75 by failing to use Permco's monies for payment of claims in Permco's self-insured employee health care plan.

14

(5:10 CV 823)

Accordingly, Permco's motion for partial summary judgment against PBA as to Count 3 is GRANTED.

B.   No Just Reason for Delay

Rule 54(b) of Fed.R.Civ.P. provides that when an action presents more than one claim for relief the Court may direct entry of a final judgment as to fewer than all claims or parties if the Court expressly determines that there is no just reason for delay, which permits an immediate appeal of a district court's judgment even though the lawsuit contains unresolved claims.  The Sixth Circuit in *General Acquisition, Inc. v. GenCorp, Inc.,*[9] has outlined the analysis which must be undertaken by a district court in determining whether to exercise its discretion to certify a judgment for appeal prior to the ultimate disposition of the entire case.

In making that determination, the district court must first decide whether the judgment at issue is "final" in the sense that it is the ultimate disposition of an individual claim which has been made in the course of a multiple claim action.  Second, the district court must balance the needs of the parties against the interests of efficient case management.  *General Acquisition, Inc. v. GenCorp, Inc.,* 23. F.3d 1022, 1026-27.

In this case, Permco's claim for ERISA liability of PBA - the corporate entity with whom Permco contracted to act as a third party administrator and who exercised control and authority over Permco's Plan funds - is a separate cognizable claim for relief.  The Court's ruling in favor of Permco on Claim 3 is a final decision with respect to PBA's liability to Permco, and is separate from other claims and cross-claims between and among the other parties.

---

[9] 23 F.3d 1022 (6th Cir. 1994).

15

(5:10 CV 823)

With respect to the second step of the analysis, the Court has finds that: 1) Count 3 of Permco's complaint against Professional Benefits Administrators is a claim wholly separate from its claims against other defendants and among other parties; 2) although the dismissed claim against Professional Benefits Administrators is separate from the remaining claims, an immediate appeal of the dismissed claim is necessary to clarify the shape and scope of this complex case as to the remaining claims of both Permco and other parties; 3) if the Court of Appeals declines review at this juncture, it is nearly certain that the Court of Appeals will be reviewing the merits of Court's Memorandum Opinion and Partial Judgment Entry at a later time; 4) because an immediate appeal of this dismissed claim will clarify the shape and scope of the case as to all remaining claims, there is little possibility that the Court of Appeals will face the same issue a second time in the future; 5) PBA is in a precarious financial position and prompt resolution of the core claim against it will likely reduce the overall cost of litigation and increase the likelihood of plaintiffs' recovery if their claims against PBA prevail; and 6) an immediate appeal and clarification of the shape and scope of the case as to the remaining claims will improve judicial efficiency in resolving all other claims and may improve the prospects for settlement of the remaining claims.

Based on this analysis, the Court believes that the potential advantages outweigh the disadvantages of delay inherent in an immediate appeal, and therefore determines that there is no just reason for delay in entering final judgement pursuant to Fed.R.Civ.P. 54(b) in favor of plaintiff Guyan International dba Permco and against defendant Professional Benefits Administrators with respect to Count 3 of Permco's complaint.

16

(5:10 CV 823)

Accordingly, the Court directs and orders the entry of a final partial judgment in favor of plaintiff Guyan International dba Permco and against defendant Professional Benefits Administrators with respect to Count 3 of Permco's complaint in the amount of $501,380.75.

IT IS SO ORDERED.

| | |
|---|---|
| January 7, 2011 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |