DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Guyan International, Inc., dba Permco, et al.,    )
                                                 )    CASE NO. 5:10 CV 823
                              Plaintiffs,         )
                                                 )
         v.                                       )    MEMORANDUM OPINION AND
                                                 )    ORDER
Professional Benefits Administrators, Inc., et    )
al.,                                              )
                                                 )
                              Defendants.          )

        This case was initially filed by plaintiff Guyan International, Inc., dba Permco, (Permco)

against defendants Professional Benefits Administrators (PBA) and Robert Hartenstein

(Hartenstein).  Permco entered an agreement with PBA to administer Permco's Employee

Benefit Plan (Permco Plan).  Under the agreement, PBA was to pay Permco's employees' claims

under the Permco Plan with funds provided by Permco to PBA for that purpose.  At some point,

Permco became aware that PBA had not paid the Permco Plan claims as agreed and that

Permco's funds were unaccounted for.  Permco sued PBA and Hartenstein for damages in

connection with defendants' alleged failure to pay Permco Plan claims and for the missing funds.

        Since Permco first filed its complaint, five intervening plaintiffs[1] with similar allegations

have joined the lawsuit.[2]  Multiple crossclaims and third party complaints have also been filed,

_____

        [1] Intervening plaintiffs Pritchard Mining Company (Pritchard), Merit Gear, LLC (Merit
Gear), Precision Gear, LLC (Precision Gear), Sheltering Arms Hospital Foundation (Sheltering
Arms), and Hocking, Athens, Perry Community Action Agency (HAPCAA).

        [2] Pritchard's Amended Intervening Complaint (ECF 84); Merit Gear's Intervening
Complaint (ECF 139); Precision Gear's Intervening Complaint (ECF 139); Sheltering Arms'
Intervening Complaint (ECF 141); and HAPCAA's Intervening Complaint (ECF 126).

(5:10 CV 823)

adding four additional parties[3] to the lawsuit. The claims of the intervening plaintiffs, cross-claimants, and third party complaints all relate to who is responsible for the non-payment of provider claims and missing monies of PBA's clients.

In the interest of advancing the core complaint of the original plaintiff, Permco, and of shaping the resolution of the core claim of the intervening plaintiffs, the Court determined to allow Permco to file a motion for partial summary judgment against PBA only, in the belief that resolution of this aspect of the case will focus and advance resolution of the entire case. Accordingly, plaintiff Permco was granted leave to file a motion for partial summary judgment only with respect to its claims against defendant PBA, and Permco moved for summary judgment against PBA on Counts 3[4] and 4[5] of its complaint for compensatory damages resulting from PBA's breach of its fiduciary duty, or alternatively, for PBA's breach of contract ECF 101.

After granting Permco's motion for partial summary judgment, defendants PBA and Hartenstein filed an appeal with the Sixth Circuit Court of Appeals.  ECF 172.  That appeal remains pending.

Subsequently, the Court granted leave to the intervening plaintiffs to file motions for partial summary judgment with respect to their claims against defendant PBA only.  *See* ECF 186.  Partial motions for summary judgment were filed by intervening plaintiffs Pritchard (ECF

---

[3] Pamela S. Priddy, Myriad Health, Apple Growth Partners, and Curtis Professional Group.

[4] "PBA and Hartenstein have breached their fiduciary duties toward the Plan and its participants in violation of 29 U.S.C. § 1109 and § 1104(a)."

[5] "PBA has breached the terms of the Agreement by failing to pay claims and . . . by diverting monies intended to pay claims for its own benefit or for the benefit of others."

2

(5:10 CV 823)

164),[6] HAPCAA (ECF 191),[7] Precision Gear (ECF 193)[8] and Merit Gear (ECF 194)[9] with

respect to PBA's breach of fiduciary duty under ERISA[10] and breach of contract.  Those motions

are ripe for decision.

      For the reasons contained herein, the Court rules as follows:

      Intervening plaintiff Pritchard's motion for partial summary judgment (ECF 164)

is GRANTED;

      Intervening plaintiff HAPCAA's motion for partial summary judgment (ECF 191)

is GRANTED;

      Intervening plaintiff Precision Gear's motion for partial summary judgment (ECF 193)

is GRANTED; and

      Intervening plaintiff Merit Gear's motion for partial summary judgment (ECF 194)

is DENIED.

---

[6] Pritchard's motion for partial summary judgment was opposed by PBA (ECF 205), to which Pritchard replied (ECF 206).

[7] HAPCAA's motion for partial summary judgment was opposed by PBA (ECF 204), to which HAPCAA replied (ECF 208).

[8] Precision Gear's motion for partial summary judgment was opposed by PBA (ECF 203), to which Precision Gear replied (ECF 212).

[9] Merit Gear's motion for partial summary judgment was opposed by PBA (ECF 202), to which Merit Gear replied (ECF 213).

[10] *See* ERISA sections 404, 405, 406, 409 and 412, 29 U.S.C. §§ 1104, 1105, 1106, 1109 and 1112.

(5:10 CV 823)

## I.  FACTS

There is no genuine dispute regarding the following facts based on the record before the Court.

A.     <u>Pritchard Mining Company</u>

Pritchard and PBA entered into a Benefit Management Service Agreement (Pritchard Service Agreement) whereby PBA agreed to provide administrative services for the Pritchard Mining Company Employee Benefit Plan (Pritchard Plan) between January 1, 2007 and March 31, 2010.  *See*  ECF 84-3.  The Pritchard Plan is an employee benefit plan as defined under the Employer Retirement Income Security Act of 1974, as amended, (ERISA).  *See* ERISA Section 3, 29 U.S.C. § 1002.

Pritchard was the Plan Administrator and PBA was the Benefits Administrator under the Pritchard Service Agreement.  Section 5 of the Pritchard Service Agreement outlines PBA's responsibilities as Benefits Administrator.  Section 6 of the Pritchard Service Agreement authorizes PBA to pay Pritchard Plan benefits by check from monies in a segregated bank account established by PBA and funded by Pritchard for that purpose, and gives PBA authority to provide instructions to any custodial agent having actual custody of Pritchard Plan Funds (as hereinafter defined) to accomplish disbursement of Pritchard Plan Funds in payment of claims made under the Pritchard Plan.  Pritchard paid PBA a fee for its services in accordance with a fee schedule described in Section 7 of the Pritchard Service Agreement.  Subsection (B) of Section 7 required that PBA bill Pritchard for administrative fees "separately from statements for payment of claims."

4

(5:10 CV 823)

PBA's obligations under the terms of the Pritchard Service Agreement included maintenance of a fidelity bond as required by ERISA Section 412 (29 U.S.C. § 1112), receiving funds from Pritchard for payment of Pritchard Plan claims (Pritchard Plan Funds), maintaining Pritchard Plan Funds in a segregated bank account, processing and payment of Pritchard Plan claims, and exclusive use of Pritchard Plan Funds for payment of Pritchard Plan claims. Comingling of Pritchard Plan Funds was specifically prohibited by the Pritchard Service Agreement.

PBA periodically sent Pritchard a written "claim money transfer" requesting a check for a specific amount supported by a statement of claims to be paid by the money transfer requested. In response to a "claim money transfer" Pritchard provided monies to PBA to fund the Pritchard Plan account established by PBA and to be used by PBA exclusively to pay Pritchard Plan benefits.

It is undisputed based on the evidence in the record that in 2009 and early in 2010, PBA deposited Pritchard Plan Funds into PBA's "main" account and not into Pritchard's segregated account.  Funds in PBA's "main" account were used by PBA to pay PBA's operational expenses. It is also undisputed that PBA comingled Pritchard Plan Funds with PBA's funds and the funds of other PBA clients, and failed to pay Pritchard Plan claims.

Pritchard provided PBA with $409,943.88 in Pritchard Plan Funds to pay Pritchard Plan claims, but PBA did not use those funds to pay Pritchard Plan claims.  Instead, PBA used Pritchard Plan Funds for PBA's own operational purposes and, in some cases, to pay the claims of other PBA clients, contrary to the terms of the Pritchard Service Agreement.  To ensure

5

(5:10 CV 823)

continuing benefits to its employees, Pritchard has secured a loan to fund previously funded

claims a second time.  ECF 164-3, par. 11.

B.    Hocking, Athens Perry Community Action Agency

HAPCAA and PBA entered into a Benefit Management Service Agreement (HAPCAA

Service Agreement) whereby PBA agreed to provide administrative services for the HAPCAA

Employee Benefit Plan (HAPCAA Plan) beginning April 1, 2007, and continuing until April 30,

2010.  *See*  ECF 126-1; Affidavit of Tim Davies.  The HAPCAA Plan is an employee benefit

plan as defined under the Employer Retirement Income Security Act of 1974, as amended,

(ERISA).  *See* ERISA Section 3, 29 U.S.C. § 1002.

HAPCAA was the Plan Administrator and PBA was the Benefits Administrator under the

HAPCAA Service Agreement.  Section 5 of the HAPCAA Service Agreement outlines PBA's

responsibilities as Benefits Administrator.  Section 6 of the HAPCAA Service Agreement

authorizes PBA to pay HAPCAA Plan benefits by check from monies in a segregated bank

account established by PBA and funded by HAPCAA for that purpose, and gives PBA authority

to provide instructions to any custodial agent having actual custody of HAPCAA Plan Funds (as

hereinafter defined) to accomplish disbursement of HAPCAA Plan Funds in payment of claims

made under the HAPCAA Plan.  HAPCAA paid PBA a fee for its services in accordance with a

fee schedule described in Section 7 of the HAPCAA Service Agreement.  Subsection (B) of

Section 7 required that PBA bill HAPCAA for administrative fees "separately from statements

for payment of claims."

6

(5:10 CV 823)

PBA's obligations under the terms of the HAPCAA Service Agreement included maintenance of a fidelity bond as required by ERISA Section 412 (29 U.S.C. § 1112), receiving funds from HAPCAA for payment of HAPCAA Plan claims (HAPCAA Plan Funds), maintaining HAPCAA Plan Funds in a segregated bank account, processing and payment of HAPCAA Plan claims, and exclusive use of HAPCAA Plan Funds for payment of HAPCAA Plan claims.  Comingling of HAPCAA Plan Funds was specifically prohibited by the HAPCAA Service Agreement.

HAPCAA provided funds to PBA to pay HAPCAA Plan claims.  HAPCAA Plan Funds were to be  used by PBA exclusively to pay HAPCAA Plan benefits.  However, PBA deposited HAPCAA Plan Funds into PBA's "main" account and not into HAPCAA's segregated account. Funds in PBA's "main" account were used by PBA to pay PBA's operational expenses.  It is also undisputed that PBA comingled HAPCAA Plan Funds with PBA's funds and the funds of other PBA clients, and failed to pay HAPCAA Plan claims.

HAPCAA provided PBA with $384,574.17 in HAPCAA Plan Funds to pay HAPCAA Plan claims, but PBA did not use those funds to pay HAPCAA Plan claims.  Instead, PBA used HAPCAA Plan Funds for PBA's own operational purposes and, in some cases, to pay the claims of other PBA clients, contrary to the terms of the HAPCAA Service Agreement.  HAPCAA has paid the provider claims not paid by PBA, essentially paying the same claims twice.  ECF 191-1, par. 8.

(5:10 CV 823)

C.      Precision Gear and Merit Gear

Precision Gear and Merit Gear filed a joint intervenors' complaint.  ECF 139.  This sparse complaint alleges that both intervening plaintiffs entered into "Agreements" with PBA and that PBA "was responsible for managing the claims and submitting the claims to Plaintiffs for payment."

1.      Precision Gear

Precision Gear and PBA entered into a Benefit Management Service Agreement (Precision Service Agreement) whereby PBA agreed to provide administrative services for the Precision Gear's employee benefit plan (Precision Plan) beginning August 1, 2007 and continuing for approximately nine (9) years.  *See*  ECF 139, Ex. B; ECF 212-1.  The Precision Plan is an employee benefit plan as defined under the Employer Retirement Income Security Act of 1974, as amended, (ERISA).  *See* ERISA Section 3, 29 U.S.C. § 1002.

Precision Gear was the Plan Administrator and PBA was the Benefits Administrator under the Precision Service Agreement.  Section 5 of the Precision Service Agreement outlines PBA's responsibilities as Benefits Administrator.  Section 6 of the Precision Service Agreement authorizes PBA to pay Precision Plan benefits by check from monies in a segregated bank account established by PBA and funded by Precision Gear for that purpose, and provides PBA with authority to provide instructions to any custodial agent having actual custody of Precison Plan Funds (as hereinafter defined) to accomplish disbursement of Precision Plan Funds in payment of claims made under the Precision Plan.  Precision Gear paid PBA a fee for its services in accordance with a fee schedule described in Section 7 of the Precision Service Agreement.

8

(5:10 CV 823)

Subsection (B) of Section 7 required that PBA bill Precision Gear for administrative fees "separately from statements for payment of claims."

PBA's obligations under the terms of the Precision Service Agreement included maintenance of a fidelity bond as required by ERISA Section 412 (29 U.S.C. § 1112), receiving funds from Precision Gear for payment of Precision Plan claims (Precision Plan Funds), maintaining Precision Plan Funds in a segregated bank account, processing and payment of Precision Plan claims, and exclusive use of Precision Plan Funds for payment of Precision Plan claims.  Comingling of Precision Plan Funds was specifically prohibited by the Precision Service Agreement.

PBA periodically sent Precision Gear a written "claim money transfer" requesting a check for a specific amount supported by a statement of claims to be paid by the money transfer requested.  In response to a "claim money transfer" Precision Gear provided monies to PBA to fund the Precision Plan account established by PBA and to be used by PBA exclusively to pay Precision Plan benefits.

It is undisputed based on the evidence in the record that Precision Gear provided PBA with $44,290.12 in Precision Plan Funds to pay Precision Plan claims.  However, PBA did not use those funds to pay Precision Plan claims, contrary to the terms of the Pritchard Service Agreement.  Precision Gear then paid medical providers directly $44,290.12 to pay claims for which it had already advanced funds to PBA, but which were not paid by PBA.  ECF 212-1, par. 12.

9

(5:10 CV 823)

      2.     Merit Gear

In its motion for summary judgment, Merit Gear advances affidavit testimony that PBA provided adminstrative services for Merit Gear's employee benefit plan pursuant to a written agreement.  ECF 195-1, par. 5.  However, there is no written agreement in the record between Merit Gear and PBA, and PBA challenges whether the terms of the Precision Service Agreement was intended to set forth the terms of any agreement that may have existed between PBA and Merit Gear.  Even if the Court were to accept the affidavit testimony of Merit Gear's Human Resources Manager that there was a service agreement between Merit Gear and PBA, the record before the Court is devoid of information or documentation regarding the terms of such an agreement.

As a consequence, the Court concludes that, as to Merit Gear, there is a genuine dispute regarding material facts with respect to Merit Gear's motion for partial summary judgment on the issue of PBA's breach of ERISA fiduciary duty and breach of contract.

## II.  INTERVENING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

A.    <u>Pritchard</u>

Pritchard has moved for partial summary judgment against PBA as to Counts I and V of Pritchard's amended complaint.  ECF 164.  In Count I, Pritchard alleges that PBA breached its fiduciary duty under ERISA Sections 404, 405, 406, 409 and 412, 29 U.S.C. §§ 1104, 1105, 1106, 1109 and 1112.  In Count V, Pritchard alleges that PBA breached the terms of the benefits services agreement between Pritchard and PBA.

(5:10 CV 823)

B.      HACAA's

HAPCAA has moved for partial summary judgment against PBA as to Counts I and III of Pritchard's amended complaint.  ECF 164.  In Count I, HAPCAA alleges that PBA breached its fiduciary duty under ERISA Sections 404, 405, 406, 409 and 412, 29 U.S.C. §§ 1104, 1105, 1106, 1109 and 1112.  In Count III, HAPCAA alleges that PBA breached the terms of the benefits services agreement between HAPCAA and PBA.

C.      Precision Gear

Precision Gear has moved for partial summary judgment against PBA with respect to its allegations that PBA breached its fiduciary duty under ERISA with respect to the Precision Plan, and breached the benefits services agreement between Precision Gear and PBA.

D.      PBA's Opposition

PBA's oppositions to intervening plaintiffs' motions for partial summary judgment do not dispute the facts advanced by intervening plaintiffs' in their motions regarding the existence of the service agreements, PBA's obligations under the service agreements, PBA's handling of Plan funds, and the fact that the intervening plaintiffs' Plan claims were unpaid and the funds were used for other purposes. PBA's argument focuses on the legal effect of those facts, principally that PBA is not an ERISA fiduciary and whether the intervening plaintiffs suffered damages as a consequence of PBA's actions.  In addition, PBA argues that the intervening plaintiffs' motions for partial summary judgment should be denied because PBA did not have the opportunity to conduct discovery and therefore is unable to adequately defend the motion.

11

(5:10 CV 823)

### III.  APPLICABLE LAW AND ANALYSIS

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." U.S. v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he threshold inquiry [is] whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250. Therefore, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

B.    <u>PBA Has Been Afforded Adequate Discovery</u>

It is improper to grant summary judgment if the non-movant is given insufficient opportunity for discovery.  *White's Landing Fisheries, Inc. v. Bucholzer*, 29 F.3d 229, 231 (6th

12

(5:10 CV 823)

Cir. 1994).  While PBA contends that it has not been afforded an adequate opportunity for discovery, PBA does not specify the discovery required or how additional discovery will shed any further light on the issues raised in intervening plaintiffs' motions for partial summary judgment.

A significant amount of discovery has already been taken in this case and PBA has had the opportunity to fully participate in that discovery.  The discovery already taken includes the depositions of Robert Hartenstein and Linda Westfall, and documentary evidence regarding the intervening plaintiffs' service agreements and unpaid claims.  Further, the amount of unpaid claims and resulting damages to the intervening plaintiffs was the subject of determination by a forensic accountant retained by the Receiver for PBA who was appointed by the Court.

The Court concludes that in this case, PBA has had sufficient opportunity for discovery to respond to the intervening plaintiffs' motions for partial summary judgment and that additional time for discovery would not shed further light on the issues presented in the pending motions. *White's Landing Fisheries, Inc. v. Bucholzer*, 29 F.3d 229, 231 (6th Cir. 1994) (" . . . *some* discovery must be afforded the non-movant before summary judgment is granted . . ." (emphasis added));  *Ball v. Union Carbide Corp.,* 385 F.3d 713, 721 (6th Cir. 2004) (district court did not abuse its discretion in denying discovery request when non-moving party failed to state how additional discovery "would have shed further light" on the issues).

Accordingly the Court concludes that PBA has been afforded with an adequate opportunity to conduct discovery vis-a-vis the issues presented in the intervening plaintiffs' motions for partial summary judgment, and that PBA's arguments regarding insufficient

13

(5:10 CV 823)

discovery are without merit as a basis for denying intervening plaintiffs' motions for partial

summary judgment.

C.      Breach of Fiduciary Duty Under ERISA

29 U.S.C. § 1109(a) provides:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

In order to prevail on their respective motions for partial summary judgment against PBA

for breach of fiduciary duty under ERISA, intervening plaintiffs must each establish that there is

no genuine dispute that: 1) PBA was a plan fiduciary with respect to each intervening plaintiffs'

ERISA plan (collectively, Plan); 2) PBA's acts with respect to each intervening plaintiffs'

ERISA plan constituted a breach of fiduciary duty; and 3) PBA's breach caused harm to the

intervening plaintiff claiming breach.  *See Shirk v. Fifth Third Bankcorp,* 2008 WL 4449024 at

*9 (S.D. Ohio 2008) (citing *Pegram v. Herdrich,* 530 U.S. 211, 225-26 (2000)); *Miller v. Yazaki*

*North America,*2006 WL 3446246 at *4 (E.D. Mich. 2006) (there must be a causal link between

the breach of fiduciary duty and plaintiff's loss) (citing *Allison v. Bank One-Denver*, 289 F.3d

1223, 1239 (10th Cir. 2002)).

**1.      PBA is an ERISA Fiduciary**

Under 29 U.S.C. 1002(21)(A), a person is a fiduciary with respect to an employee benefit

plan to the extent that:

14

(5:10 CV 823)

> (i) he exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting management or
> disposition of its assets, (ii) he renders investment advice for a fee or other compensation
> . . . with respect to any money or other property of such plan, or has any authority or
> responsibility to do so, or (iii) he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(9) defines a "person" to mean "an individual, partnership, joint

venture,

corporation, mutual company, joint-stock company, trust, estate, unincorporated organization,

association, or employee organization."

The Sixth Circuit employs a "functional test" to determine fiduciary status under ERISA.

*Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006).  That is, ERISA defines fiduciary not in

terms of formal trusteeship but in functional terms of control and authority.  *Id.* (internal

quotations omitted) (citing *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (quoting

*Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993)).  Accordingly, in order to determine

whether PBA is a fiduciary under ERISA with respect to the Plan, the Court's inquiry focuses on

PBA's function.  That is, whether PBA "exercised *discretionary* authority over plan

management, or *any* authority or control over plan assets." *Briscoe v. Fine*, 444 F.3d at 488

(emphasis in original) (citing 29 U.S.C. 1002(A)(21)).

> *a.  PBA did not exercise discretionary authority or control over the Plan.*

There is no genuine dispute that the intervening plaintiffs' respective service agreements

with PBA did not give PBA the power to make Plan policies or interpretations.  PBA's role as a

claims/benefits administrator involved receiving and depositing Plan funds from the intervening

plaintiffs, determining eligibility, and writing checks against Plan funds, ostensibly to pay Plan

15

(5:10 CV 823)

claims.  The law in the Sixth Circuit is clear that third party administrators performing such functions do not exercise discretionary authority with respect to the plan and are not ERISA fiduciaries under that aspect of the statutory definition. *Briscoe v. Fine*, 444 F.3d at 488-490.

Accordingly, the Court concludes as a matter of law that the PBA was not an ERISA fiduciary as regards its ability to exercise discretionary authority over the Plan.

### b.  *PBA exercised control and authority over Plan assets.*

However, even if PBA did not exercise discretionary authority over the Plan, PBA can still be an ERISA fiduciary if it exercised "any authority or control" over the management or disposition of Plan assets.  The Sixth Circuit, applying "the prevailing cannons of statutory construction" to 29 U.S.C. 1002(21)(A)(i) has determined that the second part of the statutory definition of ERISA at 29 U.S.C. 1002(21)(A)(i) does not require that the control exercised over the management or disposition of plan assets be discretionary in order to satisfy that aspect of the definition of an ERISA fiduciary.  *Briscoe v. Fine*, 444 F.3d at 491.  As a consequence, the threshold for finding fiduciary responsibilities is lower for persons handling plan assets than for persons managing the plan.  *Id.*

In *Brisoce,* Judge Gilman provided a lengthy analysis of case law from other circuits regarding the type of authority or control over plan assets which satisfies the statutory definition of an ERISA fiduciary.  *Briscoe v. Fine*, 444 F.3d at 492-94 (*IT Corp v. General Am. Life Ins. Co*., 107 F.3d 1415, 1421 (9th Cir. 1997) ("the right to write checks on plan funds is 'authority or control respecting management or disposition of plan assets.'"); *LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir. 1997) (parties who possess and use their power to write checks on a plan

16

(5:10 CV 823)

account exercise control over plan assets); *David P. Coldesina, D.D.S. v. Estate of Simper,* 407 F.3d 1126, 1133-35 (10th Cir. 2005) (parties who possess and use their power to write checks on a plan account exercise control over plan assets).

Based on its analysis of the statutory language, the Sixth Circuits's earlier holding in *Smith v. Provident Bank*,[11] and the case law in other circuits regarding what constitutes "any authority or control" regarding the management or disposition of plan assets, the Sixth Circuit in *Briscoe* held that "any person or entity that exercises control over the assets of an ERISA covered plan, including third-party administrators, acquires fiduciary status with regard to the control of those assets," and concluded that the third party administrator in *Briscoe* was an ERISA fiduciary because it had the power to write checks on the plan account and exercised that power both before and after its contractual relationship as a third party administrator had ended. *Briscoe v. Fine*, 444 F.3d at 494.[12]

In so holding, the Sixth Circuit was careful to acknowledge the limits of its holding regarding fiduciary status:

> We wish to emphasize that our holding today is a limited one. Our reading of ERISA's statutory definition will not "extend fiduciary status to every person who exercises 'mere possession or custody' over the plans' assets." [citations omitted]. To the contrary, our decision conforms with the statute's "purpose of assuring that

---

[11] *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).

[12] "The decision in *Smith* is faithful to the plain language of 29 U.S.C. § 1002(21)(A) - as the vast majority of circuits to address the question have construed that language - and serves to clarify that a third-party administrator performing the [purely ministerial functions] described in the DOL regulation can nevertheless acquire fiduciary status where, in addition to its other actions, it exercises control over plan assets."

17

(5:10 CV 823)

> people who have practical control over an ERISA plan's money have fiduciary responsibility as to the plan's beneficiaries." *IT Corp.,* 107 F.3d at 1421.

*Briscoe v. Fine*, 444 F.3d at 494.

### c.  PBA is an ERISA Fiduciary

In the case of each intervening plaintiff, there is no genuine dispute that the intervening plaintiffs provided Plan funds to PBA and that PBA had practical control over those assets, not merely custodial control.[13]  Once the Plan funds were received by PBA from each intervening plaintiff, PBA controlled the deposit and transfer of Plan funds into various PBA accounts, including non-segregated accounts, as well as the distribution of such funds.  PBA had practical control over Plan funds because it had the ability to write checks against Plan funds, even checks which were not written in payment of the Plan claims in accordance with the terms for handling Plan funds established by the intervening plaintiffs in their respective service agreements.

PBA's ability to deposit intervening plaintiffs' Plan funds in accounts of its choosing, and to utilize Plan funds for uses other than payment of intervening plaintiffs' Plan benefits, demonstrates that there is no genuine dispute that PBA had authority and control over intervening plaintiffs' Plan funds, not mere custody of the funds.  PBA both possessed the power to control the deposit of and to write checks against the Plan funds provided to PBA by intervening plaintiffs, and exercised that power to do so.

PBA does not dispute that Plan funds were received from intervening plaintiffs, that PBA deposited Plan funds into accounts other than intervening plaintiffs' respective segregated

---

[13] In fact, the service agreements between PBA and the intervening plaintiffs gave PBA the authority to direct entities with custodial control over plan funds.

(5:10 CV 823)

accounts, that PBA utilized Plan funds for purposes other than paying intervening plaintiffs'

respective Plan claims, that intervening plaintiffs' Plan claims were not paid by PBA, or even the

amount of unpaid claims claimed by each intervening plaintiff.  Rather, PBA disputes the legal

effect of such facts.

    The Court finds that there is no genuine dispute as to any material fact regarding PBA's

control and authority over intervening plaintiffs' respective Plan assets.  PBA did not merely

have possession or custody of those plan assets, but exercised control and authority over the

disposition of intervening plaintiffs' Plan funds within the meaning of the statute and controlling

case law.

    Accordingly, the Court concludes as a matter of law based on undisputed facts in the

record that PBA was an ERISA fiduciary with respect to the Pritchard Plan, the HAPCAA Plan,

and the Precision Gear Plan within the meaning of 29 U.S.C. § 1001, et seq.

    2.    **PBA Breached its  ERISA Fiduciary Duty**

    Having concluded that PBA is an ERISA fiduciary because PBA had control and

authority over Pritchard Plan Funds, HAPCAA Plan Funds, and Precision Gear Plan Funds, the

second factor in the analysis is whether there is a genuine dispute as to whether PBA breached

its fiduciary duty.  ERISA fiduciaries are required by law to act "solely in the interest of the

[plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *see also Kuper v. Iovenko*, 66 F.3d

1447, 1458 (6th Cir. 1995).  In addition to describing how ERISA fiduciaries are required to

conduct themselves with respect to the ERISA plan, the statute also describes prohibited

19

(5:10 CV 823)

conduct, including "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

As a fiduciary, PBA had a duty to use the Plan assets of the respective intervening plaintiffs solely in interest of the Plan - in this case, for payment of the Plan claims.  Based on the record before the Court, there is no genuine dispute that PBA used the intervening plaintiffs' Plan assets for its own operational expenses, and in some instances, for payment of claims of PBA's other clients.  Such use of intervening plaintiffs' Plan assets for PBA's own interests and for its own account is prohibited conduct by a fiduciary under ERISA.

Accordingly, the Court concludes as a matter of law based on undisputed facts in the record that PBA breached its fiduciary duty under ERISA with respect to the Pritchard Plan, the HAPCAA Plan, and the Precision Gear Plan.

### 3.  PBA's Breach of its Fiduciary Duty Caused the Loss of Intervening Plaintiffs' Plan Funds

There is no genuine dispute that the health care benefit plans established by intervening plaintiffs for their eligible employees are self-funded. That is, the plans are funded by contributions from the intervening plaintiffs.  When intervening plaintiffs received a list of claims and costs from PBA, intervening plaintiffs provided PBA with a check in the amount required by PBA to cover their respective plan claims.  However, these claims were paid by PBA in the amounts previously noted.  Pritchard, HACAA and Precision Gear each put forward evidence that they advanced additional funds to pay their plan claims that were unpaid by PBA.

20

(5:10 CV 823)

Accordingly, the Court concludes as a matter of law that based on the undisputed facts in the record that PBA's breach of its fiduciary duty caused the loss of Plan funds to Pritchard in the amount of $409,943.88; to HAPCAA in the amount of $384,574.17; and to Precision Gear in the amount of $44,290.12.

D.     Breach of Contract

Intervening plaintiffs also moved in the alternative for partial summary judgment against PBA on the claims in their intervening complaints for breach of contract in the event the Court found that PBA was not an ERISA fiduciary.  Intervening plaintiffs' state claims for breach of contract are preempted by ERISA because the Court has determined that PBA was an ERISA fiduciary.  However, had the Court concluded that PBA was not an ERISA fiduciary, intervening plaintiffs' breach of contract claims would not be preempted by ERISA.  *See Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp.,* 399 F.3d 692, 701-03 (6th Cir. 2005).

In that event, the same undisputed facts that formed the basis for the Court's determination to grant intervening plaintiffs' motions for partial summary judgment on their claims for breach of ERISA fiduciary duty, would also support a determination that intervening plaintiffs' motions for partial summary judgment on their breach of contract should be granted. The Court found *supra* that there is no genuine dispute that the respective service agreements between the intervening plaintiffs and PBA provided that PBA shall not commingle among its business or personal assets, or draw against for its own purposes, any monies or contributions of the intervening plaintiffs or their plan participants, and that there is no genuine dispute that PBA

21

(5:10 CV 823)

handled intervening plaintiffs' respective plan funds in a manner prohibited by the service agreements.  The Court's causation analysis of intervening plaintiffs' damages with respect to PBA's breach of its fiduciary duty also results in the conclusion that intervening plaintiffs' sustained damages as a consequence of PBA's breach of their service agreements.

Accordingly, if the Court had concluded that PBA was not an ERISA fiduciary, it would have been appropriate to grant intervening plaintiffs' motions for partial summary judgment against PBA as to their respective breach of contract claims.

## IV.  CONCLUSION

A.    <u>Pritchard's Motion for Partial Summary Judgment as to Count I is GRANTED</u>

For the reasons contained herein, the Court has determined that there is no genuine dispute that PBA was an ERISA fiduciary with respect to Pritchard's employee health care plan, that PBA breached its fiduciary duty, and that PBA's breach of fiduciary duty damaged Pritchard in the amount $409,943.88.

Accordingly, Pritchard's motion for partial summary judgment against PBA as to Count I is GRANTED.

B.    <u>HPCAA's Motion for Partial Summary Judgment as to Count I is GRANTED</u>

For the reasons contained herein, the Court has determined that there is no genuine dispute that PBA was an ERISA fiduciary with respect to HAPCAA's employee health care plan, that PBA breached its fiduciary duty, and that PBA's breach of fiduciary duty damaged HAPCAA in the amount $384,574.17.

22

(5:10 CV 823)

Accordingly, HAPCAA's motion for partial summary judgment against PBA as to Count I is GRANTED.

C.    Precision Gear's Motion for Partial Summary Judgment
      Against PBA for Breach of Fiduciary Duty is GRANTED

For the reasons contained herein, the Court has determined that there is no genuine dispute that PBA was an ERISA fiduciary with respect to Precision Gear's employee health care plan, that PBA breached its fiduciary duty, and that PBA's breach of fiduciary duty damaged Precision Gear in the amount $44,290.12.

Accordingly, Precision Gear's motion for partial summary judgment against PBA for breach of ERISA fiduciary duty is GRANTED.

D.    Merit Gear's Motion for Partial Summary Judgment is DENIED

For the reasons contained herein, the Court has determined that there are genuine material issues of fact in dispute regarding Merit Gear's motion for partial summary judgment against PBA.

Accordingly, Merit Gear's motion for partial summary judgment is DENIED.

E.    No Just Reason for Delay

Rule 54(b) of Fed.R.Civ.P. provides that when an action presents more than one claim for relief the Court may direct entry of a final judgment as to fewer than all claims or parties if the Court expressly determines that there is no just reason for delay, which permits an immediate appeal of a district court's judgment even though the lawsuit contains unresolved claims.  The

(5:10 CV 823)

Sixth Circuit in *General Acquisition, Inc. v. GenCorp, Inc.,*[14] has outlined the analysis which must be undertaken by a district court in determining whether to exercise its discretion to certify a judgment for appeal prior to the ultimate disposition of the entire case.

In making that determination, the district court must first decide whether the judgment at issue is "final" in the sense that it is the ultimate disposition of an individual claim which has been made in the course of a multiple claim action. Second, the district court must balance the needs of the parties against the interests of efficient case management. *General Acquisition, Inc. v. GenCorp, Inc.,* 23. F.3d 1022, 1026-27.

In this case, intervening plaintiffs' claims for breach of ERISA fiduciary duty against PBA - the corporate entity with whom intervening plaintiffs contracted to act as a third party administrator and who exercised control and authority over intervening plaintiffs' plan funds - is a separate cognizable claim for relief. The Court's ruling in favor of intervening plaintiffs' claims for breach of fiduciary duty is a final decision with respect to PBA's liability to intervening plaintiffs, and is separate from other claims, cross-claims, and third party claims between and among the other parties.

With respect to the second step of the analysis, the Court finds that: 1) intervening plaintiffs' claims for breach of fiduciary duty against PBA are claims wholly separate from their claims against other defendants and among other parties; 2) although those claims are separate from their remaining claims, an immediate appeal of the Court's ruling on those claims is necessary to clarify the shape and scope of this complex case as to the remaining claims of the

---

[14] 23 F.3d 1022 (6th Cir. 1994).

24

(5:10 CV 823)

intervening plaintiffs and other parties; 3) if the Court of Appeals declines review at this

juncture, it is nearly certain that the Court of Appeals will be reviewing the merits of Court's

Memorandum Opinion and Partial Judgment Entry at a later time; 4) because an immediate

appeal of the Court's present ruling with respect to these claims will clarify the shape and scope

of the case as to all remaining claims, there is little possibility that the Court of Appeals will face

the same issue a second time in the future; 5) PBA is in a precarious financial position and

prompt resolution of the core claim against it will likely reduce the overall cost of litigation and

increase the likelihood of plaintiffs' recovery if their claims against PBA prevail; and 6) an

immediate appeal and clarification of the shape and scope of the case as to the remaining claims

will improve judicial efficiency in resolving all other claims and may improve the prospects for

settlement of the remaining claims.

     Based on this analysis, the Court believes that the potential advantages outweigh the

disadvantages of delay inherent in an immediate appeal, and therefore determines that there is no

just reason for delay in entering final judgement pursuant to Fed.R.Civ.P. 54(b) in favor of

intervening plaintiff: 1) Pritchard and against defendant Professional Benefits

Administrators with respect to Count 1 of Pritchard's amended complaint; 2); HPCAA and

against defendant Professional Benefits Administrators with respect to Count 1 of HPCAA's

complaint; and 3) Precision Gear and against defendant Professional Benefits Administrators

with respect to Precision Gear's complaint against PBA for breach of ERISA fiduciary duty.

     Accordingly, the Court directs and orders the entry of a final partial judgment in favor of:

1) Pritchard and against defendant Professional Benefits Administrators with respect to Count 1

(5:10 CV 823)

of Pritchard's complaint in the amount of $409,943.88; 2) HPCAA and against defendant

Professional Benefits Administrators with respect to Count 1 of HPCAA's complaint in the

amount of $384,574.17; and 3) Precision Gear and against defendant Professional Benefits

Administrators with respect to Precision Gear's complaint against PBA for breach of ERISA

fiduciary duty in the amount of $44,290.12.

       IT IS SO ORDERED.


  May 10, 2011                                *s/ David D. Dowd, Jr.*           
Date                                            David D. Dowd, Jr.
                                                  U.S. District Judge